[Cite as *Couch v. Durrani*, 2021-Ohio-726.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| BARBARA COUCH, | : | APPEAL NO. C-190703 |
| | | TRIAL NO. A-1806458 |
| Plaintiff-Appellant, | : | |
| vs. | | |
| | : | |
| ABUBAKAR ATIQ DURRANI, M.D., | | |
| | : | |
| and | | |
| | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| Defendants, | : | |
| and | : | |
| CHRIST HOSPITAL, | : | |
| Defendant-Appellee. | : | |

| | | |
|---|---|---|
| TODD GREEN, | : | APPEAL NO. C-190704 |
| | | TRIAL NO. A-1806463 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| Defendant, | : | |
| and | : | |
| CHRIST HOSPITAL, | : | |
| Defendant-Appellee. | : | |

| | | |
|---|---|---|
| SHANDON SIMMONS, | : | APPEAL NO. C-190705<br>TRIAL NO. A-1806428 |
| Plaintiff-Appellant, | : | |
| vs. | | |
| | : | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| and | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| Defendants, | : | |
| and | : | |
| CHRIST HOSPITAL, | : | |
| Defendant-Appellee. | : | |

| | | |
|---|---|---|
| FRANCENE COOK, | : | APPEAL NO. C-190706<br>TRIAL NO. A-1806464 |
| Plaintiff-Appellant, | : | |
| vs. | | |
| | : | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| and | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| Defendants, | : | |
| and | : | |
| CHRIST HOSPITAL, | : | |
| Defendant-Appellee. | : | |

| | | |
|---|---|---|
| EVELYN YOUNG, | : | APPEAL NO. C-190707 |

2

|  |  | TRIAL NO. A-1502866 |
|---|---|---|
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| Defendant, | : | |
| and | : | |
| CHRIST HOSPITAL, | : | |
| Defendant-Appellee. | : | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  March 12, 2021

*Robert A. Winter Jr., The Deters Law Firm Co. II, P.A.*, *James F. Maus* and *Alex Petraglia,* for Plaintiffs-Appellants Barbara Couch, Todd Green, Shandon Simmons, Francene Cook, and Evelyn Young,

*Dinsmore & Shohl LLP, Jennifer Orr Mitchell, Matthew S. Arend* and *R. Samuel Gilley,* for Defendant-Appellee The Christ Hospital.

3

**CROUSE, Judge.**

{¶1} These five consolidated appeals concern the latest in the several hundred cases involving alleged medical malpractice by defendant Abubakar Atiq Durrani, M.D. In line with recent authority from this court, we conclude that appellants' claims are barred by the four-year medical-malpractice statute of repose. Therefore, we affirm the judgments of the trial court.

## I. Facts & Procedure

{¶2} Appellants are five former patients of Durrani, a spinal surgeon who formerly operated at defendant-appellee The Christ Hospital ("TCH"). Appellants underwent various spinal surgeries with Durrani between April 2007 and April 2009. Appellants allege that their surgeries were among the hundreds of medically unnecessary surgeries performed by Durrani.

{¶3} Central to this appeal, appellants claim that TCH negligently credentialed, supervised, and retained Durrani as a credentialed physician. Appellants allege that TCH failed to adequately evaluate Durrani's educational background, work history, and peer reviews when he applied for privileges at TCH. Appellants further allege that TCH knew about Durrani's fraudulent scheme, and yet, continued granting him surgical privileges and allowing him to operate at its facilities. According to appellants, TCH willfully disregarded complaints about Durrani reported by its staff, doctors, and patients; ignored complaints pertaining to Durrani's privileged time at other area hospitals; and settled several cases involving Durrani's alleged misconduct. Appellants ultimately contend that TCH allowed and encouraged Durrani's conduct in order to enhance its revenues.

4

{¶4}    When allegations of the fraudulent scheme surfaced, appellants separately filed complaints against Durrani and TCH.[1]  Young filed her complaint in May 2015.  Couch, Green, Simmons, and Cook filed their complaints in December 2018.  The claims asserted against TCH—which are the subjects of this appeal—included fraud and negligent credentialing, supervision and retention.  In each case, TCH filed a motion to dismiss arguing that the claims were filed outside the four-year medical-malpractice statute of repose.  Agreeing with TCH, the trial court found appellants' claims were barred by the statute of repose and dismissed all of the cases with prejudice.

{¶5}    Appellants filed separate appeals and this court sua sponte consolidated the five cases.  Appellants collectively raise one assignment of error.

## II. Legal Standard & Analysis

{¶6}    In their sole assignment of error, appellants contend that the trial court erred by granting TCH's motions to dismiss.  We review de novo a trial court's decision to grant or deny a motion to dismiss under Civ.R. 12(B)(6).  *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

{¶7}    The motions to dismiss focused on the applicability of R.C. 2305.113(C), Ohio's four-year medical-malpractice statute of repose.  Appellants' claims arose from various spinal surgeries performed by Durrani between April 2007 and April 2009.  But all of appellants' complaints were filed more than four years after their respective surgeries—the earliest complaint filed in May 2015.  Therefore, the statute of repose presumptively bars their claims.

---

[1] Appellants Couch, Cook, and Simmons also named Durrani's practice, the Center for Advanced Spine Technologies, Inc., as a defendant.

{¶8} Appellants argue that their claims fall outside the scope of R.C. 2305.113, and therefore, the statute of repose is inapplicable to their claims. However, all of appellants' arguments are foreclosed by our recent precedent.

## A. Negligent-Credentialing Claims

{¶9} First, appellants argue that their negligent-credentialing claims are not "medical claims" within the meaning of R.C. 2305.113(C). Appellants also argue that a "physician" is not a "caregiver" for purposes of R.C. 2305.113(E)(3)(b)(ii). Appellants contend that "caregiver" is a generic term that refers only to nurses, nurses' aides, and housekeeping staff.

{¶10} In *Young v. Durrani*, 2016-Ohio-5526, 61 N.E.3d 34 (1st Dist.), we held that negligent-credentialing claims are "medical claims" as defined in R.C. 2305.113(E)(3)(b)(ii). We have twice reaffirmed the holding in *Young*. *See Crissinger v. Christ Hospital*, 2017-Ohio-9256, 106 N.E.3d 798 (1st Dist.) ("Our previous holding in *Young* established that the claims for negligence, negligent credentialing, and fraud were 'medical claims' within the statute of repose, and we follow that holding in these cases."); *McNeal v. Durrani*, 2019-Ohio-5351, 138 N.E.3d 1231, ¶ 19 (1st Dist.) ("We see no reason to depart from this line of cases and accordingly find these plaintiffs' negligent credentialing claims likewise present 'medical claims' barred here by the statute of repose.").

{¶11} Appellants now ask us to overrule this line of cases. Appellants argue that *Young* is in conflict with *Browning v. Burt*, 66 Ohio St.3d 544, 613 N.E.2d 993 (1993), and its progeny.

{¶12} In *Browning*, the Ohio Supreme Court distinguished a negligent-credentialing claim against a hospital from a medical claim alleging malpractice against a physician. *Browning* interpreted former R.C. 2305.11, which narrowly

6

defined a "medical claim" as "any claim that is asserted in any civil action against a physician, podiatrist, or hospital, * * * and that arises out of the medical diagnosis, care, or treatment of any person." The court reasoned, "Negligent credentialing claims arise out of the hospital's failure to satisfy its independent duty to grant and continue staff privileges only to competent physicians. This independent duty does not directly involve diagnosis or the medical care and treatment of a patient." *Id.* at 557. Accordingly, the court held that a negligent-credentialing claim is not subject to the medical-malpractice statute of limitations. *Id.* at 558.

{¶13} In an attempt to supersede *Browning*, the General Assembly redefined the term "medical claim" to explicitly include negligent credentialing. *See* 1996 Am.Sub.H.B. No. 350 ("H.B. 350"). Pursuant to H.B. 350, a "medical claim" included "a claim that is asserted * * * against a hospital and that is based on negligent credentialing." In 1999, the Ohio Supreme Court held that H.B. 350 violated the one-subject rule of the Ohio Constitution and was unconstitutional in its entirety. *See State ex rel. Ohio Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 715 N.E.2d 1062 (1999). To address the procedural deficiency, the General Assembly subsequently enacted 2002 Am.Sub.S.B. No. 281 ("S.B. 281"). S.B. 281 moved the definition of a "medical claim" to the newly-enacted R.C. 2305.113 and re-expanded the definition to include claims arising from "the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment."

{¶14} The case law that has evolved since the 2002 statute is not particularly helpful to the issue presented in this case—whether a negligent-credentialing claim is a "medical claim" within the meaning of R.C. 2305.113. Appellants argue that the

Ohio Supreme Court's recent decision in *Evans v. Akron Gen. Med. Ctr.*, Slip Opinion No. 2020-Ohio-5535, reaffirmed *Browning*. We disagree.

{¶15} In *Evans*, the plaintiff-patient alleged that she had been sexually assaulted by a treating physician at the defendant-hospital. *Id.* at ¶ 2. The plaintiff immediately filed a criminal complaint against the doctor, but the police declined to pursue criminal charges. *Id.* The plaintiff did not file a civil action against the doctor within the one-year statute of limitations for civil battery. *Id.* Instead, the plaintiff brought a claim for negligent hiring, supervision, and/or retention against the hospital within the two-year statute of limitations for negligence actions. *Id.* The trial court granted summary judgment for the hospital, holding that the hospital could not be liable for negligent hiring, retention, or supervision where the doctor could not be found civilly liable or guilty of the underlying sexual assault. *Id.*

{¶16} The main issue on appeal was whether an employee must be found civilly liable or guilty of a crime before a plaintiff can sue an employer for negligent hiring, supervision, or retention. As a corollary to that issue, the Ohio Supreme Court also had to consider whether the claim for negligent hiring, supervision, or retention was limited by the one-year statute of limitations for civil battery.

{¶17} With respect to the second issue—which is the basis of appellants' argument—the court held that the statute of limitations for negligent hiring, supervision, and retention was not affected by the statute of limitations for the underlying conduct. *Id.* at ¶ 12. The court had determined that "a plaintiff need not show that an employee has been adjudicated civilly liable or has been found guilty of a crime * * * in order * * * to maintain a negligent hiring, retention, or supervision claim against an employer." *Id.* at ¶ 10. Because an employee need not be held legally accountable to maintain a viable action against the employer, the court

concluded that a negligent hiring, retention, and/or supervision claim is governed solely by the bodily-injury statute of limitations. *Id.*

{¶18} Notably, *Evans* did not address whether a negligent-credentialing claim (a separate but related claim) is a "medical claim." Neither party in that case disputed that a claim for negligent hiring, supervision, and retention was subject to the two-year bodily-injury statute of limitations. Rather, the parties disputed whether the plaintiff's failure to file a civil action against the employee within that limitations period foreclosed the plaintiff's ability to later prove a claim for negligent hiring, supervision, and retention against the employer. Thus, *Evans* is not controlling and does not affect our prior precedent. We determine that the Ohio Supreme Court has not otherwise ruled on the issue since the General Assembly amended and expanded the definition of "medical claim."

{¶19} Although the court did not explicitly address the issue, the decision in *Evans* actually supports a finding that negligent-credentialing claims are "medical claims" for purposes of R.C. 2305.113. In *Evans*, the court clarified that claims for negligent hiring, supervision, or retention are "claim[s] against an employer * * * that would not have occurred but for the employer's failure to properly hire, supervise, or retain the employee." *Evans*, Slip Opinion No. 2020-Ohio-5535, at ¶ 10. As detailed above, the current and applicable version of R.C. 2305.113 defines a "medical claim" as a claim resulting from the "hiring, training, supervision, retention, or termination of caregivers[.]" Therefore, while the Ohio Supreme Court has not determined whether a negligent-credentialing claim is a "medical claim" for purposes of current legislation, it has defined related claims to reflect the amended definition of "medical claim." Thus, there is no reason to depart from our decision in *Young*.

{¶20} Appellants' argument that Durrani was not a "caregiver" is likewise unpersuasive. The General Assembly did not define the word "caregiver" in the statute, nor have we done so in our prior opinions. Under the plain and ordinary meaning of the word, a "caregiver" is "a person who provides direct care (as for children, elderly people, or the chronically ill)." *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/caregiver (accessed Mar. 4, 2021).

{¶21} R.C. 2305.113(E) specifically refers to caregivers who provide "medical diagnosis, care, or treatment." The terms "medical diagnosis," "care," and "treatment" relate to "the identification[,] [prevention,] and alleviation of a physical or mental illness, disease, or defect." *Browning*, 66 Ohio St.3d at 557, 613 N.E.2d 993 (discussing the terms as analogously used in former R.C. 2305.11). By law, the diagnosis of a medical condition and the prescription of a course of treatment are limited to licensed physicians. *Berdyck v. Shinde*, 66 Ohio St.3d 573, 579, 613 N.E.2d 1014 (1993). Therefore, "caregiver" is a broad term that necessarily includes a physician.

{¶22} Based on the foregoing, appellants have not presented a compelling reason to overrule our holdings in *Young*, *Crissinger*, and *McNeal*. Applying our precedent, appellants' negligent-credentialing claims are "medical claims" as defined in R.C. 2305.113. Thus, their claims are barred by the statute of repose.

### B. Fraud and Equitable-Estoppel Exceptions

{¶23} Next, appellants urge us to recognize a fraud exception and/or an equitable-estoppel exception to the statute of repose.

{¶24} In *Freeman v. Durrani*, 2019-Ohio-3643, 144 N.E.3d 1067 (1st Dist.), we refused to craft a fraud or equitable-estoppel exception to the statute of repose.

We found that the General Assembly intentionally chose not to create such exceptions for medical claims, and determined that "this court should not substitute its judgment for that legislative choice." *Id.* at ¶ 12.

{¶25} Appellants now ask us to overrule *Freeman*. However, appellants do not present any compelling reason to depart from our holding in *Freeman*. Instead, appellants argue that equitable principles and public-policy considerations demand a different result.

{¶26} The Ohio Supreme Court has consistently held that "R.C. 2305.113(C) is a true statute of repose that * * * clearly and unambiguously precludes the commencement of a medical claim more than four years after the occurrence of the alleged act or omission that forms the basis of the claim." *Wilson v. Durrani*, Slip Opinion No. 2020-Ohio-6827, ¶ 38; *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, ¶ 1. Thus, "[w]e must heed the plain language of this unambiguous statute, and any claim of injustice or inequity must be resolved through the legislative process rather than judicial redress." *State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 16.

{¶27} We again decline appellants' invitation to create a fraud or equitable-estoppel exception to R.C. 2305.113(C).

### C. Fraud Claims

{¶28} Finally, appellants argue that their fraud claims are independent nonmedical claims not governed by the statute of repose.

{¶29} In *Freeman* and *McNeal*, we examined the same arguments presented by appellants herein and held that fraud claims relating to a physician's treatment are "medical claims" under R.C. 2305.113. Those cases encompassed allegations of recommending unnecessary surgery, failing to disclose the risks of surgery,

11

misinforming the patient about the outcome of the surgery, and concealing information to avoid civil liability.

{¶30} Appellants again ask us to overrule *Freeman*. However, appellants do not present any new reason to depart from our holding in *Freeman*. Thus, appellants' fraud claims are "medical claims" subject to the four-year statute of repose.

### III.    Conclusion

{¶31} For the foregoing reasons, we overrule appellants' sole assignment of error and affirm the judgments of the trial court.

Judgments affirmed.

**ZAYAS, P.J.**, and **MYERS, J.,** concur.


Please note:

The court has recorded its own entry on the date of the release of this opinion.